UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

BRIDGEWATER ASSOCIATES, INC.,

        Petitioner,

  - against -

VIVIN OBEROI,

        Respondent.

------------------------------------X

05 Civ. 4471 (RWS)

O P I N I O N

A P P E A R A N C E S:

  KING & SPALDING LLP
  Attorneys for Petitioner
  1185 Avenue of the Americas
  New York, NY 10036
  By:  MICHAEL M. GORDON, ESQ.
      KAREN R. KOWALSKI, ESQ.
      Of Counsel

  GEHRING TATMAN & SATRIALE LLC
  Attorneys for Respondent
  60 East 42nd Street, Suite 817
  New York, NY 10165
  By:  JOSEPH E. GEHRING, JR., ESQ.
      Of Counsel

10/28/05

Sweet, D.J.,

Petitioner Bridgewater Associates, Inc. ("Bridgewater") seeks to stay the arbitration of two counterclaims filed by respondent Vivin Oberoi ("Oberoi") in a pending arbitration between the parties. For the reasons set forth below, the stay is granted in part and denied in part.

**Prior Proceedings**

In January 2004, Bridgewater commenced suit against Oberoi and Telluride Asset Management LLC ("Telluride") in the U.S. District Court for the District of Connecticut in the action titled <u>Bridgewater Associates, Inc. v. Vivin Oberoi and Telluride Asset Management LLC</u>, Civil Action No. 3:04 Civ. 0076 (JCH) (the "Connecticut Action"). The action was assigned to U.S. District Judge Janet C. Hall.

In its complaint, Bridgewater alleged violations of the Connecticut Uniform Trade Secrets Act ("CUTSA") and the Connecticut Unfair Trade Practices Act ("CUPTA") by Oberoi and Telluride. Bridgewater also alleged a breach of contract claim against Oberoi based on Oberoi's breach of the non-compete and confidentiality requirements contained in his employment agreement of October 6, 1998 with Bridgewater (the "Agreement"). On February 27, 2004,

1

Judge Hall issued a preliminary injunction order, enjoining Oberoi from disclosing certain information to Telluride.

On August 13, 2004, Oberoi filed a motion in the Connecticut Action to compel arbitration of the claims asserted by Bridgewater. On November 4, 2004, following discovery on the issue of personal jurisdiction over Telluride, the Court dismissed the Connecticut Action as against Telluride based on lack of personal jurisdiction. By order filed on December 16, 2004, Judge Hall granted Oberoi's motion to compel arbitration and administratively closed the case.

On February 9, 2005, Bridgewater filed its demand for arbitration with the American Arbitration Association ("AAA"), reasserting its claims against Oberoi for violations of CUTSA and CUTPA and for breach of the non-compete and confidentiality requirements of the Agreement. The location of the arbitration is New York, New York.

Oberoi, in his second amended answering statement and counterclaims dated April 21, 2005 in the arbitration has alleged five counterclaims against Bridgewater. Oberoi alleges as his first counterclaim that he was entitled to a share of Bridgewater's revenues and that he was not paid the share to which he was entitled. Based on those same allegations, Oberoi alleges breach of the Agreement as his second counterclaim. Oberoi has alleged as

his third counterclaim that Bridgewater, by commencing the Connecticut Action and asserting allegedly false claims in that action, tortiously interfered with Oberoi's employment with Telluride. Oberoi, as his fourth counterclaim, has alleged that the preliminary injunction issued by Judge Hall on February 27, 2004 was wrongful. As his fifth counterclaim, Oberoi has alleged that in or about December 2004, more than a year after Oberoi resigned from Bridgewater, Bridgewater or its counsel retained a private investigator who allegedly obtained unauthorized access to Oberoi's online account records with Oberoi's cellular telephone carrier, AT&T Wireless, Inc. Oberoi contends that the private investigator's action tortiously interfered with Oberoi's contractual relationship with AT&T Wireless and caused Oberoi emotional distress.

On May 6, 2005, Bridgewater, alleging diversity jurisdiction,[1] filed the instant petition seeking to stay the arbitration of the fourth and fifth counterclaims asserted by Oberoi. The motion was heard and marked fully submitted on June 8, 2005.

## The Facts

Bridgewater is incorporated under the laws of the State of Connecticut and has its principal place of business in Connecti-

---

[1] Bridgewater is a Connecticut corporation and Oberoi a New York resident.

cut and is a global investment manager, which manages a hedge fund as well as investment portfolios for institutional clients. It has developed investment managements systems (the "Investment Management Systems"), which it considers trade secrets. <u>See</u> Petition For An Order Staying Arbitration ("Petition"), ¶ 6.

Oberoi is a citizen of the State of New York. In 1993, Bridgewater hired Oberoi as a research associate in which capacity Oberoi became generally responsible for gathering and analyzing economic data in an attempt to identify relationships among economic indicators and the value of investment instruments. Oberoi became the primary research assistant to Raymond Dalio, Bridgewater's president and chief investment officer, and obtained extensive information concerning Bridgewater's Investment Management Systems. <u>Id.</u> ¶ 7.

On or about October 6, 1998, Oberoi entered into the Agreement with Bridgewater which contained confidentiality and non-compete provisions. Section 5 of the Agreement, captioned "Dispute Resolution," states:

> In the event of a dispute between the parties <u>arising out of or relating to this Agreement</u>, the parties agree that their exclusive remedy shall be to submit the dispute to a confidential and binding arbitration under the auspices of the American Arbitration Association.

(Emphasis added). <u>Id.</u>

On September 5, 2003, Oberoi resigned from his employment at Bridgewater. On or prior to November 3, 2003, Oberoi became employed as a portfolio manager at Telluride, a hedge fund.

Section 6 of the Agreement states that it "shall be governed by the laws of the State of Connecticut."

**Under The Agreement The Court Determines The Scope Of Arbitration**

Under Connecticut law, "the arbitrability of a dispute is a legal question for the court unless the parties have clearly agreed to submit that question to arbitration." City of Bridgeport v. Bridgeport Police Local 1159, 438 A.2d 1171, 1173 (Conn. 1981).

Oberoi contends that the language of the parties' arbitration clause shows that he and Bridgewater agreed to submit the question of arbitrability to the arbitrator. In making his contention, Oberoi relies on Bell v. Cendant Corp., 293 F.3d 563 (2d Cir. 2002), and on two decisions of this Court that apply New York law, and seeks to dismiss the precedential value of Scinto v. Sosin, 721 A.2d 552 (Conn. App. Ct. 1998), cert. denied, 724 A. 2d 1125 (1999).

In City of Bridgeport, the Supreme Court of Connecticut stated that:

> [t]he intention to have arbitrability determined by an arbitrator can be manifested by an express provision or through the use of broad terms to describe the scope of the arbitration, such as "all questions in dispute and all claims arising out of" the contract or "any dispute that cannot be adjudicated."

438 A.2d at 1173 (quoting Bd. of educ. v. Frey, 392 A.2d 466, 467 (Conn. 1978)). Seventeen years later, in Scinto, the Appellate Court of Connecticut similarly recognized that "[w]hether the parties intended to arbitrate the issue of arbitrability may be determined from an express provision of that effect or from the use of broad terms." 721 A.2d at 556 (citing Welch Group, Inc. v. Creative Mgmt., Inc., 576 A.2d 153 (Conn. 1990)).

Under the Connecticut case law where the language in the parties' employment agreement does not demonstrate that the parties intended to arbitrate the issue of arbitrability, it is a matter for the court to determine. See Paine Webber Inc. v. Bybyk, 81 F.3d 1193, 1198-99 (2d Cir. 1996) ("the arbitrability of a given issue is a question for the court unless there is 'clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended the question of arbitrability shall be decided by the arbitrator") (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

Section 5 of the Agreement quoted above describes an arbitrable dispute as "arising out of or relating to this Agreement." This language is narrower than the language at issue in

City of Bridgeport and Bell, and does not establish that the parties agreed to arbitrate the issue of arbitrability.

The parties' agreement in City of Bridgeport provided for arbitration of any grievance where,

> [A]ny employee or group of employees feel aggrieved concerning his or their wages, hours or conditions of employment, which wages, hours or conditions are controlled by this contract, or which are provided for in any statute, charter, provision, or ordinance, rule or regulation which is not in conflict with this contract, or concerning any matter or condition arising out of the employee-employer relationship ...

438 A.2d at 1173 (emphasis in original). Based on what the Supreme Court expressly referred to as this "all-inclusive language," the court concluded that the parties intended the question of arbitrability to be determined by the arbitrators. Id.

In Scinto, 17 years after the Supreme Court decided City of Bridgeport, the Appellate Court of Connecticut concluded that language narrower than that used by the parties in Bridgeport, but somewhat broader than that used by Bridgewater and Oberoi in their Agreement was not sufficiently broad to "manifest an intention to arbitrate the issue of arbitrability."[2] 721 A.2d at 557.

---

[2] In Scinto, the parties' agreement provided that "any controversy or claim arising out of or related to the contract, or the breach thereof, shall be settled by arbitration ..." 721 A.2d at 555.

7

Scinto, in the six years since its issuance, has been cited with approval at least ten times and in at least two cases for the specific proposition that an arbitration clause such as the one in the Agreement does not manifest an intent to submit the question of arbitrability to the arbitrator. See, e.g., Lupone v. Lupone, 848 A.2d 539 (Conn. App. Ct. 2004), cert. denied, 853 A.2d 526 (2004); Carlin, Pozzi Architects, PC v. Town of Bethel, 767 A.2d 1272 (Conn. App. Ct. 2001); Sood v. Comprehensive Pain & Headache Treatment Ctrs., LLC, No. 466931, 2004 WL 3106047 (Conn. Super. Ct. Dec. 14, 2004); Smith v. Bu Bu Bear, LLC, No. CV040-199370, 2004 WL 2040804 (Conn. Super. Ct. Aug. 18, 2004); Wilson Bldg. & Design Assoc., Inc. v. Vanderkerckhove, No. CV010096157S, 2002 WL 237038 (Conn. Super. Ct. Jan. 25, 2002); Peerless Ins. Co. v. Structural Pres. Sys., Inc., No. CV 990175067, 2000 WL 1228022 (Conn. Super. Ct. Aug. 16, 2000); Reg'l Sch. Dist. No. 9 v. Wayne Const. Co., No. CV 99037880S, 2000 WL 727504 (Conn. Super. Ct. May 18, 2000); A-Z Auto Sound Sys., Inc. v. Infinity Sys., No. CV 990591585, 1999 WL 1288949 (Conn. Super. Ct. Dec. 16, 1999); Carlin Pozzi Architects, PC v. Town of Bethel, No. CV-99-0265945-S, 1999 WL 332772 (Conn. Super. Ct. May 13, 1999); Carlin, Pozzi Architects, PC v. Town of Bethel, No. CV 990265945S, 1999 WL 115121 (Conn.Super. Ct. Feb. 25, 1999); New Milford Bd. of Educ. v. Int'l Fed'n of Prof'l and Technical Eng'rs, No. CV970073000S, 1998 WL 928910 (Conn. Super. Ct. Dec. 31, 1998).

The difference between a "super broad" provision such as the one at issue in City of Bridgeport and the more usual provision found in cases such as Scinto and this action is dispositive. Thus, in Lupone, the issue on appeal was whether the trial court improperly determined that the language of the arbitration clause "compelled the conclusion that the arbitration panel must decide the scope of arbitrable issues." 848 A.2d at 541. There the claims stated:

> [a]ny dispute, difference, disagreement, or controversy among the Partners arising out of or in connection with the Partnership or the interpretation of the meaning or construction of the Agreement, shall be referred to a board ...

Id. The Appellate Court, in affirming the trial court's decision, specifically distinguished this provision from clauses of the type at issue in Scinto and here:

> In addition to defining broadly the scope of arbitration by use of the expansive prefatory phrase, "[a]ny dispute, difference, disagreement, or controversy among the Partners," the clause expressly reserves to the panel the authority to decide any dispute arising out of "the interpretation of the meaning or construction of the Agreement ..." The issue of arbitrability arises directly from the interpretation of the meaning of the arbitration clause contained in the parties' [arbitration] agreement. The terms of the clause, therefore, mandate that the issue of arbitrability be determined by the panel.

848 A.2d at 542.

In Sood, the parties had entered into an employment agreement containing an arbitration clause that stated: "Any and all disputes arising out of, under, in connection with or [sic] relation to this agreement shall be settled by Arbitration in the State of Connecticut before the American Arbitration Association . . . ." 2004 WL 3106047, at *1. In holding that this clause did not demonstrate an intent to submit to the arbitrator the issue of arbitrability, the court explained:

> In Scinto, "the construction contract contained the following arbitration clause: 'Any controversy or Claim arising out of or related to the Contract or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.'" ... As broad as this clause was, the Appellate Court held that it did not authorize the arbitration of arbitrability.
>
> In Lupone v. Lupone, 83 Conn. App. 72, 76, 848 A.2d 539, cert. denied, 270 Conn. 910, 853 A.2d 526 (2004), "[t]he arbitration clause at issue ... provide[d] that '[a]ny dispute, difference, disagreement, or controversy among the Partners arising out of or in connection with the Partnership or the interpretation of the meaning or construction of the Agreement, shall be referred to a board. ...'"
>
> The Appellate Court held that this provision authorized the arbitration of arbitrability . ...
>
> The arbitration provision here, while very broad, is closer to the provision in Scinto than that in Lupone. The arbitration clause here does not expressly provide for the arbitration of arbitrability nor does it provide for arbitration of disputes involving the interpretation of the meaning or construction of the Agreement. The court holds that the issue of arbitrability is for the court, not the arbitrators.

Sood, 2004 WL 3106047, at *2-*3.

As the Second Circuit recognized, the arbitration clause at issue in Bell was not just broad, it was "as broad an arbitration provision as one can imagine."[3] 293 F.3d at 568. Thus, Bell, like City of Bridgeport, Lupone and Sood, stands for the proposition that under Connecticut law, "super broad" language in an arbitration clause is sufficient to demonstrate that the parties intended the question of arbitrability to be determined by the arbitrator. Since the arbitration provision in Oberoi's Agreement is not "super broad," the question of arbitrability is to be determined by this Court.

Finally, Oberoi states that Bridgewater has "ignore[d] the fact that the language virtually identical" to that in the Agreement has been "construed by this Court to require that issues of arbitrability be referred to arbitration." See Opp. Mem. at 4-5. However, since neither of the two cases relied on by Oberoi for this statement construes arbitration clauses governed by the law of Connecticut, those cases are inapposite here. See Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., 962 F. Supp. 385 (S.D.N.Y. 1997) (relying on Bybyk, 81 F.3d at 1193, which construed an arbitration clause governed by New York law); New Avex, Inc. v. Socata Aircraft Inc., No. 02 Civ. 6519 (DLC), 2002 WL 1998193 (S.D.N.Y. Aug. 29, 2002) (arbitration clause was contained in an

---

[3] The clause in question stated that "any controversy arising in connection with or relating to this Agreement, or any other matter or thing, shall be determined and settled by arbitration. ..." Bell, 293 F.3d at 656, 568.

agreement containing a New York choice of law clause). As the Second Circuit stated in Bybyk,

> the arbitrability of a given issue is a question for the court unless there is "clear and unmistakable" evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.

Bybyk, 81 F.3d at 1198-99 (emphasis in original deleted).

Under Connecticut law, the arbitration clause in the parties' Agreement is "not sufficiently all-inclusive to warrant the conclusion that the parties intended to have arbitrability submitted to an arbitrator." See City of Bridgeport, 438 A.2d at 1173.

**The Fourth Counterclaim Is Not Arbitrable**

Oberoi does not dispute that his fourth counterclaim is a claim for wrongful injunction against the bond that Bridgewater filed in the District of Connecticut pursuant to Fed. R. Civ. P. 65(c). In Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 89 Civ. 1209 (JFK), 1991 WL 120287 (S.D.N.Y. June 27, 1991), the Honorable John F. Keenan construed the Second Circuit's decision in Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049 (2d Cir. 1990), to mean that "the arbitrators had no authority to rule on the disposition of the bond."

12

Blumenthal, 1991 WL 120287, at *2. In his opposition papers, Oberoi does not cite to any authority holding otherwise. See Opp. Mem. at 7-8.

Since the arbitrator is without authority to determine the fourth counterclaim, for purposes of New York CPLR § 7503(b), a valid agreement to arbitrate that claim cannot have been made. N.Y. C.P.L.R. § 7503(b)(2005). Arbitration of the fourth counterclaim is stayed.

**The Fifth Counterclaim Is Arbitrable**

Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995), stated the standard to be applied in determining whether a collateral dispute, such as the one asserted in Oberoi's fifth counterclaim, is arbitrable. If the claim "implicates issues of contract construction or the parties' rights and obligations under it," then the dispute falls within the scope of the arbitration agreement. Id. at 23. Oberoi asserts that the private investigator retained by Bridgewater's counsel purportedly accessed Oberoi's cellular telephone records "ostensibly to investigate whether Mr. Oberoi was violating his employment agreement." See Opp. Mem. at 7.

According to Bridgewater, in December 2004, almost a year after Judge Hall had denied Bridgewater's application for a

13

preliminary injunction enjoining Oberoi from working at Telluride, and more than a year after Oberoi had begun work at Telluride, Bridgewater's counsel retained a private investigator to determine whether Oberoi's counsel, during a conference call with Judge Hall on October 25, 2004, had been less than completely accurate when he stated that Oberoi was no longer working for Telluride. See Reply Affidavit of Michael M. Gordon, sworn to June 6, 2005, ¶¶ 3-6.

The retention and activity of the private investigator related to Oberoi's performance of the Agreement and therefore is arbitrable. Accordingly, Bridgewater's motion to stay arbitration of Oberoi's fifth counterclaim is denied.

It is so ordered.

**New York, NY**
October 28, 2005

ROBERT W. SWEET
U.S.D.J.

14